BOUTALL, Judge.
These consolidated cases involve a multi-vehicle accident that occurred on Interstate-10. The drivers of the four cars involved in this accident were William Bill-ingsley, John Behre, Donna Schaefer and Gerard Maxwell, Jr. In these suits Behre has sued Billingsley and his insurer. Schae-fer sued Billingsley, and Maxwell and their insurers and Behre. Maxwell sued Billings-ley and his insurer and Schaefer and her insurer. North River Insurance Company, Billingsley’s insurer, sued Behre, Schaefer and Maxwell for the damage to the Bill-ingsley car. North River also filed third party demands against Behre, Schaefer and Maxwell.
The trial court found William Billingsley to be the sole cause of the accident and granted relief to the parties on that basis. The third party demands by North River Insurance Company and its petition for damages were dismissed. Billingsley and North River Insurance Company have appealed and we affirm.
This accident occurred at 10:40 P.M. on January 11, 1973. It was cold and had been snowing or sleeting since 8:00 P.M. that night. Shortly after this accident occurred all overpasses on the Interstate highway were closed due to accumulations of ice. This accident occurred on the Transcontinental Drive overpass of the Interstate-10 highway.
The evidence in this case consisted of the testimony of the investigating police officer, photographs taken at the scene and later, and the testimony of all the drivers and passengers and of Mr. Schaefer who arrived at the scene about one minute after the accident occurred. As the trial judge correctly pointed out, almost any conclusion as to how the accident occurred could be arrived at from the evidence presented. The trial judge made the decision that the accident occurred through the negligence of Billingsley and we feel the record supports that determination.
Rather than go through a detailed analysis of each driver’s testimony and point out inconsistencies and omissions, we will sim *583 ply reconstruct how the accident must have occurred.
As the four ears approached the overpass, Billingsley was travelling behind Behre in either the right or center lane. Maxwell was somewhat behind them in the center lane. Schaefer was in the left lane. As the Behre car started up the overpass Mr. Behre noticed a car ahead of him fishtailing and looking as if it might go out of control. At this point Mr. Behre braked his car slightly. Billingsley noticed Behre’s tail lights and attempted to turn his car into another lane and brake. Billingsley lost control of his car and it smashed violently into Behre. The impact caused the Behre car to go out of control and it angled to the left across the highway, smashing violently into the right rear of the Schaefer car in the left lane. The Behre and Schaefer cars spun out of control and finally came to rest next to the left railing past the crest of the overpass. Meanwhile, the Billingsley car was turning or turned sideways athwart the center lane. Maxwell collided with the right side of the Billingsley car.[1] This impact sent the Billingsley car all the way down the overpass to where it finally came to rest on the grassy shoulder of the road 150 feet from the end of the overpass. The impact with the Billingsley car caused Maxwell to lose control and he spun into contact with the Schaefer car. This light contact caused the Maxwell car to careen from the left side of the highway to its final resting place against the right side railing facing traffic.
We arrive at the above description of the accident by relying on three major pieces of evidence: The final resting place of the ears, the extent and areas of damage on the four cars, and the consistent and corroborated testimony of the drivers other than Maxwell.
No one driver’s story tells of all the collisions. As in most multi-vehicle collisions the drivers remember only bits and pieces of the accident, mostly parts involving their own ear. The testimony of Billingsley, Behre and Schaefer presents a sketchy, piecemeal, but plausible explanation for the accident. It is only Maxwell’s testimony which, if fully believed, results in the accident requiring one or two extra, unidentified and unknown cars. Briefly, Maxwell testified that as he began his ascent of the overpass he saw a car spinning out of control ahead of him and also the Schaefer car. He states that his efforts to avoid a collision caused him to lose control of his car and strike the Schaefer car. He bounced off the Schaefer car across to the right side of the highway. Since he was facing traffic he attempted to get out of the car but couldn’t since the door was jammed. As he was contemplating moving the car another car struck him headon. The next thing Maxwell remembers is waking up in the hospital. He was found unconscious on the ground below the overpass.
If Maxwell’s version of the accident is accepted, then a fifth car was involved in the collision, one that wasn’t found at the scene. Also, his version fails to explain how the Billingsley car received severe damage to the right side.[2] As to Maxwell’s intimation in his testimony that the headon collision with the mysterious car caused him to be thrown out of the car and over the railing, we find this story also lacking in credibility. The police officer testified that someone at the scene told him that Maxwell had slipped trying to get out of his car and fallen over the railing. The police officer *584 could not remember who told him this or when he heard it. Mr. Schaefer, who came upon the accident after it occurred and before the police arrived, testified that he went to the Maxwell car and no one was in it. However, the door was jammed very close to the railing and the window by the railing was rolled down. We believe that Maxwell in a dazed condition exited his car through the window, slipped and fell to the ground below.
We hold, as did the trial court, that the proximate cause of this accident was the negligence of Billingsley in failing to keep his car under proper control in view of the then existing circumstances. Costanza v. Barker, 255 So.2d 255 (La.App. 1st Cir. 1971); Chastain v. Allstate Ins. Co., 212 So.2d 243 (La.App. 2nd Cir. 1968).
For the above reasons the judgments of the trial court are affirmed. Appellants are to pay all costs.
AFFIRMED.

. The Maxwell-Billingsley collision came so quickly after the first collision that Maxwell did not have the time and distance (on an icy surface) to avoid it. While Mrs. Schaefer testified that her car had come to a stop before the Maxwell-Schaefer cars and that that collision occurred “three to five seconds at most” after the Behre-Schaefer collision, she also described the time between seeing the Behre car angling toward her and that first collision as “seconds”.

. No one remembers seeing the Billingsley car after its initial impact with the Behre car. Yet, the damage to the car evidences two serious collisions, one to the front and one to the right side. Additionally the damage to Billingsley’s side and Maxwell’s front is so severe as to make it unlikely that any vehicle causing that damage could have continued on its way.